MURDOCK, Justice.
Citizens Property Insurance Corporation (“Citizens”) petitions for a writ of mandamus directing the Mobile Circuit Court to vacate its order denying Citizens’ motion to dismiss an action against it for lack of personal jurisdiction and to entel-an order granting the motion to dismiss. We grant the petition.
Ann B. Garnett, a resident of Huntsville, owned a two-story beach home located in Navarre Beach, Florida. The home was insured against wind damage by Citizens, which is “a [Florida] government entity that is an integral part of the state, and that is not a private insurance company.” Fla. Stat. Ann. § 627.351(6)(a)1 (2008). The Florida legislature established Citizens, a nonprofit corporation, “to provide *513 affordable property insurance to applicants who are in good faith entitled to procure insurance through the voluntary market but are unable to do so.” [1] Id. Citizens issues insurance only on property located in Florida and only through insurance agents licensed in Florida.
In the aftennath of a series of hurricanes that struck Florida in 2004, Citizens entered into agreements with numerous independent claims adjusters to evaluate wind-damage claims by Citizens’ insureds. One such adjuster was Allied American Adjusting Company, LLC (“Allied”), an Alabama limited liability company. Citizens’ contract with Allied was entered into in Florida.
In September 2004, Garnett’s beach home was destroyed by Hurricane Ivan. Thereafter, she filed a claim on her Citizens policy. Allied was the claim adjuster for Garnett’s claim. Allied hired Joseph Morris, a resident of Mobile, as the “primary adjuster” to assist with Garnett’s claim. Also, Allied retained Engineering Fire Investigations (“EFI”), a Tennessee corporation that specializes in environmental investigations, to assist with the investigation of Garnett’s claim.
In May 2005, after Allied completed its review of Garnett’s claim, Citizens denied the claim on the grounds that the damage to Garnett’s beach home allegedly was caused by storm surge from Hurricane Ivan, not by wind.
In January 2006, Garnett sued Citizens, Allied, and EFI in the Madison Circuit Court; she subsequently amended her complaint to add Morris as a defendant. Garnett’s complaint, as amended, contains claims of breach of contract, bad faith, “[ujnfair claim settlement practices,” see Florida Stat. Ann. § 626.9541(1)(i) (2008), negligence, wantonness, misrepresentation, suppression,[2] and civil conspiracy, specifi- *514 eally a conspiracy to conduct a biased investigation that would lead to the denial of Garnett’s insurance claim.[3]
Citizens filed a motion to dismiss Gar-nett’s action on the grounds that the Madison Circuit Court lacked personal jurisdiction over Citizens and on grounds of forum non conveniens. See Ala.Code 1975, § 6-5-430 (“[TJhe courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state[.]”). In May 2006, the Madison Circuit Court conducted a hearing on Citizens’ motion. In November 2006, the Madison Circuit Court entered an order, sua sponte, transferring on forum non conve-niens grounds the action to the Mobile Circuit Court.
In February 2007, the Mobile Circuit Court conducted a hearing on Citizens’ motion to dismiss, after which it ordered limited discovery concerning Citizens’ insureds who reside in Alabama. In part, the results of the ordered discovery reflect that Citizens has approximately 1.3 million active insurance policies and that, of the insurance policies Citizens issued between 2002 and 2007 (either as an original policy or as a renewal policy), 2,363 contain an Alabama mailing address for notices and correspondence.
According to an affidavit from Ray Walton, director of claims for Citizens, Garnett initially obtained her policy through a Florida insurance broker located in Fort Lauderdale, Florida. Citizens mailed the notices for Garnett’s policy to the address Garnett provided on her application for insurance, i.e., her Alabama address. We also note that Walton averred that Citizens maintains no place of business or office in Alabama, it does not conduct business in Alabama, it has no property in Alabama, it has no telephone listing in Alabama, it has no employees or authorized agents in Alabama, and it has derived no income from business conducted in Alabama.
On January 4, 2008, the Mobile Circuit Court entered an order denying Citizens’ motion to dismiss. On January 24, 2008, Garnett, Allied, EFI, and Morris filed a joint motion to dismiss, with prejudice, Garnett’s claims against them; the trial court entered an order dismissing the claims. Thus, Citizens is the only remaining defendant in Garnett’s action.
Citizens petitions this Court for a writ of mandamus directing the Mobile Circuit Court to vacate its January 4, 2008, order and to enter an order of dismissal of Gar-nett’s claims against it on the grounds of lack of personal jurisdiction or forum non conveniens.[4] Because we conclude that Citizens’ petition is due to be granted on the ground that the trial court lacks per *515 sonal jurisdiction over Citizens, we preter-mit any discussion of the issue whether Citizens’ motion to dismiss should have been granted on the ground of forum non conveniens.
 It is well settled that
“[mjandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). A petition for a writ of mandamus can be used to challenge the denial of a motion to dismiss for lack of personal jurisdiction. Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001).
The issue of personal jurisdiction “ ‘stands or falls on the unique facts of [each] case.’ ” Ex parte I.M.C., Inc., 485 So.2d 724, 725 (Ala.1986) (quoting and adopting the trial court’s order). “An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.” Elliott v. Van Kleef 830 So.2d 726, 729 (Ala.2002).[5] “In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits .... ” Ex parte Mclnnis, 820 So.2d at 798. If, however,
“the defendant makes a prima facie evi-dentiary showing that the Court has no personal jurisdiction, ‘the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.’ ”
Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004) (quoting Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002)).
Where, as here, a case involves service of process on a foreign defendant pursuant to Alabama’s long-arm rule,
“[a]n appropriate basis exists for service of process outside of this state ... when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States .... ”
Rule 4.2(b), Ala. R. Civ. P. This Court has stated that Rule 4.2 “extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions.” Hiller Invs., Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala.2006).
As to the “limits of due process” under the United States Constitution, in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court stated:
“[I]n order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
326 U.S. at 316, 66 S.Ct. 154 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); see also Sudduth v. Howard 646 So.2d 664, 667 *516 (Ala.1994). The Supreme Court continued in International Shoe:
“Whether due process is satisfied must depend ... upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.
“But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.”
326 U.S. at 319-20, 66 S.Ct. 154 (citations omitted; emphasis added).
Personal jurisdiction can rest either on the theory of specific jurisdiction, when “a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant’s contacts with the forum,” Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), or on the theory of general jurisdiction, “when the cause of action does not arise out of or relate to the foreign corporation’s activities in the forum State, [but] ... there are sufficient [continuous and systematic] contacts between the State and the foreign corporation.” Id. at 414-16, 104 S.Ct. 1868; see also Ex parte Covington Pike Dodge, Inc., supra. This Court has stated, however, that regardless of whether the issue of jurisdiction is considered under specific-jurisdiction analysis or under general-jurisdiction analysis, “[t]he critical question with regard to the nonresident defendant’s contacts [with the forum state] is whether the contacts are such that the nonresident defendant ‘ “should reasonably anticipate being haled into court” ’ in the forum state.” Elliott, 830 So.2d at 730 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting in turn World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (emphasis added)). As the Supreme Court has explained, it is only “[w]hen a corporation ‘purposefully avails itself of the privilege of conducting activities within the forum State,’ Hanson v. Denckla, 357 U.S. [235] at 253 [ (1958) ], [that] it has clear notice that it is subject to suit there.” WorldWide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559 (emphasis added). “This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of ‘ “the unilateral activity of another person or a third person.” ’ ” Elliott, 830 So.2d at 731 (quoting Burger King, 471 U.S. at 475, 105 S.Ct. 2174, quoting in turn Helicópteros Nacionales de Colombia, S.A., 466 U.S. at 417, 104 S.Ct. 1868).
Based on the materials submitted to the trial court concerning Citizens’ contacts with Alabama, we conclude that its contacts are not sufficient to satisfy the requirements for personal jurisdiction described above. As already noted, Citizens is a nonprofit “[Florida] government entity that is an integral part of th[at] State.” Further, it insures only property located in Florida, and it does so only because it has been mandated to do so by the Florida legislature. It issues insurance policies only through Florida-licensed insurance brokers; the policy at issue was issued *517 through a Florida insurance broker located in Fort Lauderdale. There is no evidence indicating that Citizens advertises in Alabama or that it otherwise solicits business in Alabama. Insofar as its policyholders are concerned, the most that can be said of Citizens, based on the record before us, is that it uses the United States mail to forward notices from its Florida office to addresses in Alabama designated by a fraction of a percent of those policyholders. Even this act is performed only as a result of the unilateral designation by those policyholders of such an address, typically because the policyholder has chosen to maintain a principal residence in Alabama.[6] See Hanson, 357 U.S. at 253, 78 S.Ct. 1228 (“The unilateral activity of those who claim some relationship with a nom’esident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant’s activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities 'within the forum State, thus invoking the benefits and protections of its laws.” (emphasis added)); see also 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 228:22 (3d ed. 2000) (“[T]he court must consider whether the insurer’s contacts with a state were the result of a deliberate and purposeful act on the part of the insurer, or whether the contacts were compelled by the unilateral actions of the insured, or were created by circumstances over which the insurer had no control.”).[7] Also, Citizens’ contract with Allied was entered into in Florida and concerned the performance of services in Florida; the only connection with Alabama in that regard is that Allied is an Alabama limited liability company. In addition, Citizens’ actions toward Garnett in response to Allied’s coverage recommendation were based on an investigation and decision-making process that apparently occurred in Florida.
Based on the foregoing, we cannot conclude that Garnett has established that Citizens purposefully availed itself of the privilege of conducting business activities within the State of Alabama such that Citizens “reasonably should anticipate being haled into court” in this State. We hold that Citizens did not subject itself to the personal jurisdiction of Alabama courts in the present case, and its petition is due to be granted.
*518 PETITION GRANTED; WRIT ISSUED.
WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
COBB, C.J., and LYONS, J., dissent.

. Citizens is the successor entity to both the Florida Windstorm Underwriting Association, which was "a non-profit residual insurer, created by the Florida Legislature, to provide insurance for wind damage to property owners who were unable to obtain it otherwise," Zimmerman v. State, Office of Ins. Regulation, 944 So.2d 1163, 1164 (Fla.Dist.Ct.App.2006), and the Florida Residential Property Casualty Joint Underwriting Association, which was established to address the lack of available homeowner's property and casualty insurance in the private-insurance market after Hurricane Andrew in 1992. Symposium, Responsibility for the Restoration of the Hurricane Insurance Industry: Business Proposal or State Solution?, 31 Nova L.Rev. 527, 530-31 (2007).
"Citizens' rates are required by law to be higher than the rates of private insurers. As a result, Citizens has a rate structure that is not meant to compete with the private market. In fact, it is '[djesigned to offer insurance only where the private market will not provide coverage' making it the 'provider of last resort.' "
31 Nova L.Rev. at 531 (quoting Kevin M. McCarty et al., Task Force on Long-term Solutions for Florida's Hurricane Insurance Market 40 n. 8 (2006) (footnotes omitted)).

. The gravamen of Garnett's action against Citizens is Citizens' decision not to pay for hurricane damage to Garnett’s residence in Florida. The complaint does not allege misrepresentation or suppression in relation to Garnett’s purchase of her insurance policy from Citizens. Instead, the allegations of misrepresentation and suppression in the complaint concern only facts "related to the investigation and adjustment of Ms. Garnett’s claim,” i.e., “that no evidence existed of wind damage to the home" and that storm surge was the cause of Garnett's loss. The complaint contains no allegation of reliance by Garnett on such representations. The pen-dency of the present case indicates that Gar-nett did not rely on any such representations and related denial of coverage. See generally Hunt Petroleum Corp. v. State, 901 So.2d 1 (Ala.2004); Restatement (Second) of Torts § 537 (1977) ("The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if, ... he relies on the misrepresentation in acting or refraining from action *514 ...."). Thus, such misrepresentations, even if made by Citizens in correspondence received by Garnett in Alabama, provide no basis for specific-contacts personal jurisdiction over Citizens in Alabama as argued by Chief Justice Cobb in her dissent.

. Although Citizens ’ enjoys limited immunity under Florida law, the parties have not discussed the extent to which that immunity might be pertinent to some of Garnett’s claims. See Fla. Stat. Ann. § 627.351(6)(r)(2008). See also Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

. Citizens also filed a motion with the trial court requesting that it stay further proceedings, including further discovery, pending this Court's decision on Citizens' petition for writ of mandamus. The trial court denied the motion. Citizens then filed a motion with this Court requesting that we order the trial court to stay further proceedings pending our decision on Citizens' petition. We granted the motion.

. The trial court made no findings of fact based on oral testimony that might implicate die ore tenus rule.

. If, after procuring a policy from Citizens, an Alabama resident were to move to Oregon, and the insurer acquiesced in the insured's request to begin forwarding notices to the insured's new address in Oregon, could we say that the insurer was doing business in Oregon so as to reasonably be expected to be haled into court in that state? To avoid being haled into court in another state, should a Florida insurance company in the sole business of selling casualty insurance on Florida real property through Florida-based agents be required to insist that prospective policyholders go through the motion of renting a post-office box somewhere in the state of Florida for the purpose of receiving notices from that company? ,We suggest that the answer to both queries is "No.”

. In support of her argument that Alabama courts have personal jurisdiction over Citizens, Garnett relies, in part, on McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). McGee was decided in 1957, before the United States Supreme Court's decision in WorldWide Volkswagen. Moreover, it is distinguishable. In McGee, a Texas-based insurance company chose to insure the life of an individual residing in the forum state in which the underlying judgment was obtained, namely California. In contrast, the object of the insurance in the present case was real property located, not in Alabama — the forum state where the plaintiff seeks to obtain a judgment — but in the state of Florida.